IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JOSHUA J. GRIGSBY, | : | |
| Plaintiff, | : | Case No. 2:04-cv-882 |
| v. | : | Judge Frost |
| REVEREND GARY SIMS, *et al.,* | : | Magistrate Judge Abel |
| Defendants. | : | |

**REPORT AND RECOMMENDATION**

This matter is before the Magistrate Judge on Defendants' December 1, 2004 motion for summary judgment (doc. 13).  Plaintiff is an inmate at the Lebanon Correctional Institution ("LCI").  He brought suit pursuant to 42 U.S.C. § 1983 alleging Defendants violated his rights to the free exercise of religion as protected by the First and Fourteenth Amendments of the United States Constitution.  He also asserts similar claims under the Ohio State Constitution.  He claims that Defendants, rather than allowing him to observe the Christian Sabbath, forced him to work on Sundays.  Defendants are Gary Sims, Religious Services Administrator of LCI, Ernie Moore, Warden of LCI, and Chaplain Benton, Chaplain of LCI.  Defendants are seeking summary judgment arguing that Plaintiff's claims are barred under the Eleventh Amendment, Plaintiff's right to the free exercise of religion was not substantially burdened, the claims are moot, and Plaintiff is statutorily barred from relief.

1

**I.  Facts.**

Plaintiff Joshua Grigsby is incarcerated at the Lebanon Correctional Institution ("LCI").  On July 29, 2004, he executed a religious affiliation intake form.  (Aff. of Arthur Thibeault, ¶ 5).  The form asked for the inmate's number, date and place of birth, race, sex, church affiliation, and religious preferences.  Grigsby completed the portion of the form that asked for his date and place of birth, race, and sex, but he left all of the questions regarding his religious affiliation blank.

On Sunday September 5, 2004, Grigsby began working in LCI's food services.  He remained in this work position until October 28, 2004.  (Aff. of Gerald LeForge, ¶ 4). While working in food services, inmates are required to work alternating days.  (Aff. of Gerald LeForge, ¶ 3).  Accordingly, while assigned this job, Grigsby was required to work four Sundays: September 5; September 19; October 3; and October 17.

Despite not indicating his religious affiliation on the religious affiliation intake form, Grigsby maintains that he is a Christian, and he should not be required to work on Sunday.  He alleges that on August 5, 2004, he filed a religious accommodations request with Defendant Benton.  (Pl.'s Mot. for Immediate Prelim. Inj., p. 3).  Grigsby asked to be excused from working on Sundays so he could observe the Christian Sabbath.  On August 17, Benton and Moore denied Grigsby's request.  *Id.*  An appeal was made to the warden, and on August 27, 2004, the decision denying his request was affirmed.  *Id.* Grigsby executed his complaint on September 2, and it was filed in this Court on September 14, 2004.

## II.  Summary Judgment Standard.

Summary judgment is governed by Rule 56(c) of the Federal Rules of Civil

Procedure which provides:

> The judgment sought shall be rendered forthwith if the pleadings,
> depositions, answers to interrogatories, and admissions on file, together
> with the affidavits, if any, show that there is no genuine issue as to any
> material fact and that the moving party is entitled to judgment as a matter of
> law.

"[T]his standard provides that the mere existence of *some* alleged factual dispute between

the parties will not defeat an otherwise properly supported motion for summary judgment;

the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty

Lobby, Inc.*, 477 U.S. 242, 247-248 (1986) (emphasis in original); *Kendall v. The Hoover

Co.*, 751 F.2d 171, 174 (6th Cir. 1984).

Summary judgment will not lie if the dispute about a material fact is genuine; "that

is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving

party." *Anderson*, 477 U.S. at 247-248.  The purpose of the procedure is not to resolve

factual issues, but to determine if there are genuine issues of fact to be tried.  *Lashlee v.

Sumner*, 570 F.2d 107, 111 (6th Cir. 1978).  Therefore, summary judgment will be

granted "only where the moving party is entitled to judgment as a matter of law, where it

is quite clear what the truth is, . . . [and where] no genuine issue remains for trial, . . . [for]

the purpose of the rule is not to cut litigants off from their right of trial by jury if they

really have issues to try." *Poller v. Columbia Broad. Sys., Inc.*, 368 U.S. 464, 467 (1962);

accord, *County of Oakland v. City of Berkeley*, 742 F.2d 289, 297 (6th Cir. 1984).

In a motion for summary judgment the moving party bears the "burden of showing the absence of a genuine issue as to any material fact, and for these purposes, the [evidence submitted] must be viewed in the light most favorable to the opposing party." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970) (footnote omitted).  Inferences to be drawn from the underlying facts contained in such materials must be considered in the light most favorable to the party opposing the motion.  *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962); *Watkins v. Northwestern Ohio Tractor Pullers Ass'n, Inc.*, 630 F.2d 1155, 1158 (6th Cir. 1980).

If the moving party meets its burden and adequate time for discovery has been provided, summary judgment is appropriate if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The mere existence of a scintilla of evidence in support of the opposing party's position will be insufficient; there must be evidence on which the jury could reasonably find for the opposing party.  *Anderson*, 477 U.S. at 251 (quoting *Improvement Co. v. Munson,* 14 Wall. 442, 448 (1872)).  As is provided in Fed. R. Civ. P. 56(e):

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.  If he does not so respond, summary judgment, if appropriate, shall be entered against him.

Thus, "a party cannot rest on the allegations contained in his . . . [pleadings] in opposition

to a properly supported motion for summary judgment against him." *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 259 (1968) (footnote omitted).

## III. Discussion.

Grigsby has asserted claims under 42 U.S.C. § 1983 because Defendants allegedly violated his rights protected by the United States Constitution. He argues that Defendants' same conduct also violates rights protected by the Ohio State Constitution.

To assert a § 1983 claim, a plaintiff must prove that he was deprived of a right secured by the Constitution or the laws of the United States and that the deprivation was caused by a person who was acting under color of state law. 42 U.S.C. § 1983. Individual defendants may be shielded from personal liability based on the doctrine of qualified immunity. "[G]overnment officials performing discretionary functions are afforded immunity from individual liability as long as their actions do not violate clearly established statutory or constitutional rights of which a reasonable person would have been aware." *Silver v. Franklin Township, Bd. of Zoning Appeals*, 966 F.2d 1031, 1035 (6th Cir. 1992). Before determining whether the individual is entitled to qualified immunity, the Court first must determine whether a constitutional violation occurred. *Id*. Therefore, the Court will proceed by examining the constitutional claims raised by Grigsby and discussing the issue of qualified immunity where appropriate.

## A. Ohio State Constitutional Claims.

### 1. Declaratory and Injunctive Relief.

Defendants first argue that Grigsby's Ohio constitutional claims cannot survive

5

because the Eleventh Amendment bars a federal plaintiff from obtaining injunctive and declaratory relief based on state law theories.  The pendent jurisdiction doctrine permits a federal court to hear state law claims if both the federal and state law claims "derive from a common nucleus of operative fact, and are so related that the plaintiff would ordinarily expect to try them all in one judicial proceeding." *State of Ohio, ex rel. v. Ohio Dept. of Health, et al.*, 810 F. Supp. 928, 930 (S.D. Oh. 1992) (quotation omitted) (punctuation omitted).  However, the pendent jurisdiction of a federal court must give way to the constitutional command of the Eleventh Amendment.  *Id.*  The recognition of a state's sovereign immunity is found in the Eleventh Amendment; it states the following:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity commenced or prosecuted against one of the United States by citizens of another state, or citizens or subjects of foreign states.

Unless the state has waived its sovereign immunity, or Congress, while acting under a proper grant of constitutional authority, has abrogated some portion of the state's immunity, the state is virtually immune from a private lawsuit in federal court.  *Mumford v. Basinski,* 105 F.3d 264, 267-68 n. 3 (6th Cir. 1997).  Therefore, "the Eleventh Amendment dictates that a federal court may not entertain a suit brought by a citizen against his own state." *Ohio Dept. of Health,* 810 F. Supp. at 930.  Moreover, whether Eleventh Amendment immunity applies is a question of law.  *Williams v. Kentucky*, 24 F.3d 1526, 1543 (6th Cir. 1994).

In *Williams*, the court stated that the "Eleventh Amendment forbids federal courts

6

from enjoining state institutions and state officials on the basis of state law and that the doctrine of pendent jurisdiction does not override the Eleventh Amendment." *Id*. (citing *Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 59 (1984)).  "The Eleventh Amendment . . . commands that a federal court not issue an injunction ordering a state official to conform his conduct to state law." *Ohio Dept. of Health,* 810 F. Supp. at 930. "[A] claim that state officials violated state law in carrying out their official responsibilities is a claim against the State that is protected by the Eleventh Amendment." *Pennhurst*, 465 U.S. at 121.

In Grigsby's complaint, he alleges that Defendants forced him to work on Sundays, which interfered with his religious exercise of observing the Christian Sabbath. He claims that this right is protected under Article I, Section 7 of the Ohio Constitution. He is asking this Court for a declaratory judgment that under the state constitution he is entitled to be excused from work on Sundays.  He also requests an injunction prohibiting Defendants from forcing him to work on Sundays.  He further demands punitive damages in the amount of $100,000 "from each Defendant for their deliberate and knowing violations of Plaintiff's right to be excused from work on [the] Christian Sabbath as mandated by ODRC Policy 72-REG-01 VI(C)(2) and the Ohio and United States Constitutions."  The case law dictates that Grigsby's state law claims for declaratory and injunctive relief cannot survive because this Court lacks jurisdiction of the pendent state constitutional claims based on sovereign immunity.

7

## 2.  Damages on State Law Theories.

While the Eleventh Amendment bars state law claims so far as they seek injunctive relief, it does not deprive "federal courts of jurisdiction over state law claims for damages against state officials sued in their individual capacities." *Williams*, 24 F.3d 1543.  There is a difference between suing a person in his or her official capacity and suing that person as an individual.  If a state actor is sued in his or her official capacity as a state actor, then sovereign immunity, unless waived, bars a claim for damages.  *Shephard, et al. v. Wellman*, 313 F.3d 963, 967-68 (6th Cir. 2002).  On the other hand, when a claim is made against a person in his or her individual capacity, federal courts will look to state law to determine if any applicable immunity has been given to the state officials.  *Powell v. Morris*, 184 F.R.D. 591, 597 (S.D. Ohio 1998).  Ohio has implemented the following policy and procedure:

> [e]xcept for civil actions that arise out of the operation of a motor vehicle and civil actions in which the state is the plaintiff, no officer or employee shall be liable in any civil action that arises under the law of the state for damage or injury caused in the performance of his duties, unless the officer's or employee's actions were manifestly outside the scope of his employment or official responsibilities, or unless the officer or employee acted with malicious purpose, in bad faith, or in a wanton or reckless manner.

OHIO REV. CODE § 9.86.

> Until the Ohio Court of Claims determines that [the individuals] are not immune, there is no cause of action cognizable under Ohio law over which the district court can assert pendent jurisdiction.  A federal court exercising pendent jurisdiction sits as a court of the forum state and is bound to apply its substantive law.  Ohio law requires that, as a condition precedent to asserting a cause of action against a state employee in his individual

8

> capacity, the Court of Claims must first determine that the employee is not
> entitled to the immunity provided for in Revised Code section 9.86. Prior
> to that condition being satisfied, then, there is no claim under Ohio law
> upon which relief may be granted against state employees in their
> individual capacities. In that regard, the only recognized cause of action
> lies, initially, against the State of Ohio in the Court of Claims.

*Haynes v. Marshall*, 887 F.2d 700, 705 (6th Cir. 1989). The procedure for filing a claim

against a state officer or employee in his personal capacity has been restated:

> [a] civil action against a state officer or employee . . . that alleges that the
> officer's or employee's conduct was manifestly outside the scope of the
> officer's or employee's employment or official responsibilities, or that the
> officer or employee acted with malicious purpose, in bad faith, or in wanton
> or reckless manner shall first be filed against the state in the court claims,
> which has exclusive, original jurisdiction to determine, initially, whether the
> officer or employee is entitled to civil immunity under section 9.86 of the
> Revised Code and whether the courts of common pleas have jurisdiction
> over the civil action.

OHIO REV. CODE. ANN. § 2743.02(F) (amended 2004 Ohio Laws Filed 138 (Sub. H.B.

316)).

In other words, if the defendants are being sued in their official capacities, they

cannot be held personally liable for damages. On the other hand, when defendants are

sued in their personal capacities, they can be  personally liable for damages if they

violated a clearly established right. However, the Court of Claims has exclusive original

jurisdiction to determine the extent of any qualified immunity that may be applicable to

the state law claims made by the plaintiffs. OHIO REV. CODE § 9.86. Therefore, this

Court is without jurisdiction to hear Grigsby's claims against Defendants for monetary

damages for the alleged violations of the Ohio State Constitution.

**B. Substantial Burden.**

Defendants argue that they are entitled to summary judgment because Grigsby has not established that his right to the free exercise of religion has been substantially burdened.  The First Amendment protects beliefs that are rooted in religion, and not beliefs that are purely secular or beliefs of personal preference.  *Thomas v. Review Bd. of the Indiana Employment Sec. Div.,* 450 U.S. 707, 713 (1981).  "[C]onvicted prisoners do not forfeit all constitutional protections by reason of their conviction and confinement in prison."  *Bell v. Wolfish*, 441 U.S. 520, 545 (1979).  However, prison officials "should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security."  *Id. at*  547.  "'To ensure that courts afford appropriate deference to prison officials,' the Supreme Court has 'determined that prison regulations alleged to infringe constitutional rights are judged under a 'reasonableness' test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights.'"  *Flagner v. Wilkinson*, 241 F.3d 472, 481 (6th Cir. 2001) (quoting *O'Lone v. Estate of Shabazz,* 482 U.S. 342, 349 (1987)).  The proper standard has been re-stated as follows: "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests."  *Turner v. Safley*, 482 U.S. 78, 89 (1987).  This "avoids the unnecessary intrusion of the judiciary into problems" better understood and resolved by those most familiar with the circumstances of maintaining and regulating prisons.  *O'Lone*, 482 U.S. at 349-50.

10

Under *Turner*, there are four factors that the courts should consider to determine if the regulation is reasonable:

> (1) whether there is a valid, rational connection between the regulation and the interest asserted; (2) whether alternative means of exercising the right remain open to the prisoner; (3) the effect the requested accommodation will have on guards, other inmates, and the allocation of prison resources; and (4) whether there is some alternative which will accommodate the prisoner's needs with *de minimis* impact on the prison's asserted interests.

*Love v. Reed*, 216 F.3d 682, 690 (8th Cir. 2000) (citing *Turner*, 482 U.S. at 89-91).

In *Murphy v. Carroll*, 202 F. Supp. 2d 421, 424 (D. Md. 2002), a Jewish inmate brought suit because prison officials provided him with free cleaning supplies on Saturday only.  This essentially forced the prisoner to clean his cell on Saturday, the Jewish Sabbath. The court determined that the prison's interest in uniform inmate schedules and economy were insufficient to warrant interference with the inmate's free exercise of religion under the First Amendment.

In the present case, Defendants have failed to provide any explanation for their insistence that Grigsby work on Sundays other than the assertion that inmates are scheduled to work on alternate days.  Apparently, if an inmate's scheduled workday falls on the inmate's Sabbath, the prison policy is to require him to work.  Exceptions are not made for inmates whose religious beliefs forbid work on the Sabbath.  Defendants do not identify the legitimate penological interests supporting this policy.  They merely assert that other means of observing their faiths are available to inmates.

The *Murphy* analysis may be applicable to the current case, but without some

11

articulated reason for the prison policy, it is difficult to make such a determination. However, I will briefly look at the other *Turner* factors.

In *Flagner*, the court did an analysis of the remaining three factors. *Flagner,* 241 F.3d 472.  Flagner was a prison inmate who wanted to grow his hair in accordance with Jewish doctrine.  However, prison regulations required facial hair to be kept short.  The court determined that there was no alternative or substitute to growing peos. *Id*. at 486.  No prison resources were ever diverted when Flagner had peos, and there was no impact on the guards or other prisoners by allowing Flagner to have his hair long. *Id*.  The court ultimately held that Flagner's challenge to the regulation could not be decided on a motion for summary judgment by the defendants.

While Grigsby did not identify any religious affiliation or preference upon entering LCI, this fact does not necessarily preclude Grigsby's claim that he is a Christian seeking to observe the Sunday Sabbath. *See Love*, 216 F.3d at 687-88 (plaintiff changing and developing his religious beliefs after being incarcerated).  Defendants have not advanced any reason why they required Grigsby to work on Sunday.  Defendants have provided some support for the argument that Grigsby has alternatives available to observe the Sabbath: Grigsby could attend mass.  However, attending mass is not the same as spending Sunday at rest.  Without Defendants briefing their justifications for their actions, I am unable to determine the reasonableness of their acts.

12

C.  **Federal Claims**.

1.  **Mootness**.

Defendants argue that Grigsby's request for injunctive and declaratory relief

should be barred because of the mootness doctrine.  Defendants argue that Grigsby is no

longer forced to work on Sundays because he no longer works in food services.  Article

III, Section 2 of the Constitution limits the jurisdiction of the federal courts to live "cases"

or "controversies."  *Powell v. McCormack*, 395 U.S. 486, 496 (1969) (stating that "a case

is moot when the issues presented are no longer "live" and the parties lack a legally

cognizable interest in the outcome.").  The Supreme Court has recognized that it is

sometimes difficult to distinguish between an existing case or controversy and an attempt

to obtain an advisory opinion.  When seeking a declaratory judgment the following

standard has been articulated:

> The difference between an abstract question and a "controversy"
> contemplated by the Declaratory Judgment Act is necessarily one of degree,
> and it would be difficult, if it would be possible, to fashion a precise test for
> determining in every case whether there is such a controversy.  Basically,
> the question in each case is whether the facts alleged, under all the
> circumstances, show that there is a substantial controversy, between the
> parties having adverse legal interests, of sufficient immediacy and reality to
> warrant the issuance of a declaratory judgment.

*Evers v. Dwyer*, 358 U.S. 202 (1958) (quoting *Maryland Casualty Co. v. Pacific Coal &*

*Oil Co.,* 312 U.S. 270, 273 (1941)).

There is an exception to the mootness doctrine for cases "capable of repetition, yet

evading review."  *Southern Pac. Terminal Co. v. ICC,* 219 U.S. 498, 515 (1911).

13

*Weinstein v. Bradford*, 423 U.S. 147, 149 (1975) formulated the test for this exception:

> (1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration; and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again.

Since the time of filing this case, Grigsby has changed jobs at the prison, and he no longer works in the food services section. However, his employer remains the same: the prison. Grigsby, relying on Gerald LeForge's affidavit, argues that he may find himself back working in food services. LeForge, the prison's food service operations manager, states that inmates regard food service jobs as undesirable and "generally don't return to food services unless they are dismissed from their other jobs for poor performance or because of other misconduct in the prison." (Aff. of Gerald LeForge, ¶ 2). I am unwilling to assume that Grigsby will lose his job because of poor job performance or misconduct, resulting in his re-assignment to food services. Consequently, I determine that he is not entitled to injunctive relief.

## 2. Prospective Relief.

Defendants argue that Grigsby's federal claims are barred because he seeks prospective relief. For their argument, Defendants rely on 18 U.S.C. § 3626(a)(1)(A):

> **(a) Requirements for relief.--**

> **(1) Prospective relief.--(A)** Prospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs. The court shall not grant or approve any prospective relief unless the court finds

14

that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief.

This provision was drafted to ensure that federal courts grant relief that extends no further than necessary than to bring prison conditions into compliance with guaranteed federal rights.  This provision does not prohibit prospective relief, nor does it bar a claim that is seeking prospective relief.  It requires that prospective relief be no more broad than necessary to cure the federal violation.  Nothing in this provision requires this Court to bar Grigsby's claims.

## D. Qualified Immunity.

It is well-established that the State cannot compel a non-denominational Christian to work on the Sabbath in violation of his sincerely held religious beliefs.  *Frazee v. Illinois Dept. of Employment Sec.,* 489 U.S. 829, 832,-34 (1989).  It is further clearly established that prisons may not interfere with inmates' free exercise of their religious beliefs unless the policy which does so is reasonably related to legitimate penological interests.  *Turner,* 482 U.S. at 89.  In their motion for summary judgment, Defendants have not identified any legitimate penological interest in support of their apparent practice of requiring all inmates including inmates whose sincerely held Christian religious beliefs prohibit work on the Sabbath to work on Sundays.

### III.  Conclusion.

I **RECOMMEND** that Defendants' December 1, 2004 motion for summary

judgment (doc. 13) be **GRANTED** in part and **DENIED** in part.  I **RECOMMEND** that

Defendants motion for summary judgment based on qualified immunity be **DENIED**.   I

**FURTHER RECOMMEND** that Defendants' motion for summary judgment be

**DENIED** regarding Plaintiff's claims that his rights to the free exercise of religion as

protected by the First and Fourteenth Amendments of the United States Constitution were

violated.  As to Plaintiff's pendent state law claims , I **RECOMMEND** that Defendants'

motion for summary judgment be **GRANTED** and Plaintiff's pendent state law claims be

**DISMISSED**.  I **FURTHER RECOMMEND** that Defendants' motion for summary

judgment be **GRANTED** as to Plaintiff's prayer for injunctive relief.  If these

recommendations are adopted, this action will continue as to Plaintiff's claim that

Defendants unconstitutionally denied him the right to the free exercise of his non-

denominational Christian religious beliefs when they required him to work on Sundays

and his prayer for monetary damages on that claim.  His prayer for injunctive relief would

be denied, and his state law claims would be dismissed.

If any party objects to this Report and Recommendation, that party may, within ten

(10) days, file and serve on all parties a motion for reconsideration by the Court,

specifically designating this Report and Recommendation, and the part thereof in

question, as well as the basis for objection thereto.  *See* 28 U.S.C. §636(b)(1)(B); Fed. R.

Civ. P. 72(b).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court.  *See Thomas v. Arn*, 474 U.S. 140, 150-152 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *See also Small v. Secretary of Health and Human Services*, 892 F.2d 15, 16 (2d Cir. 1989).

/s/ Mark R. Abel_____
United States Magistrate Judge