IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

JOSHUA J. GRIGSBY,                            :

              Plaintiff,          :       Civil Action 2:04-cv-882

    v.                                       :       Judge Frost

REVEREND GARY SIMS, *et al.*,          :       Magistrate Judge Abel

            Defendants.        :

**<u>ORDER</u>**

Plaintiff Joshua J. Grigsby brings this prisoner civil rights action pursuant to 42 U.S.C. § 1983 alleging that Defendants violated his right to the free exercise of his Christian beliefs as protected by the First and Fourteenth Amendments by requiring him to work on the Sabbath.  Defendants are prison officials at the Lebanon Correctional Institution.  This matter is before the Court on Defendants' unopposed April 11, 2005 objections to the Magistrate Judge's report and recommendation (doc. 37).

The February 28, 2005 report and recommendation recommended the Defendants' December 1, 2004 motion for summary judgment be granted in part and denied in part.  It recommended the denial of Defendants' motion so far as it argued that Plaintiff's claims were barred based on Defendants' qualified immunity; it also denied summary judgment on Defendants' claim that they did not violate Plaintiff's constitutionally protected free exercise rights.  It further recommended granting Defendants' motion for summary judgment and dismissing Plaintiff's pendent state law claims and Plaintiff's prayer for injunctive relief.  Currently before this Court are

1

Defendants' objections to their denial of summary judgment on their claim of qualified immunity and their claim that they did not sufficiently burden Plaintiff's free exercise rights when they required him to work on Sundays. Neither Plaintiff nor Defendants object to the Magistrate Judge's recommendation that summary judgment be granted in favor of Defendants on the dismissal of Plaintiff's pendent state law claims and prayer for injunctive relief.

**I. Background.**

Plaintiff Joshua Grigsby is an inmate at the Lebanon Correctional Institution ("LCI"). On July 29, 2004, upon entering LCI, Grigsby executed a religious affiliation intake form. (Aff. of Arthur Thibeault, ¶ 5). The form asked for the inmate's number, date and place of birth, race, sex, church affiliation, and religious preferences. Grigsby completed the portion of the form that asked for his date and place of birth, race, and sex, but he left all of the questions regarding his religious affiliation blank.

On Sunday September 5, 2004, Grigsby began working in LCI's food services. He remained in this work position until October 28, 2004. (Aff. of Gerald LeForge, ¶ 4). While working in food services, inmates are required to work on alternating days. (Aff. of Gerald LeForge, ¶ 3). Accordingly, while performing this job assignment, Grigsby was required to work four Sundays: September 5; September 19; October 3; and October 17.

Even though he did not indicate his religious affiliation on the religious affiliation intake form, Grigsby maintains that he is a Christian, and he should not be required to work on Sundays. He states that on August 5, 2004, he filed a religious accommodations request with Defendant Benton, which asked that he be excused from

2

working on Sundays so he could observe the Christian Sabbath.  (Compl., ¶ V.1.).  On

August 17, Benton and Moore denied Grigsby's request.  (Compl., ¶ V.2.).  An appeal

was made to the warden, and on August 27, 2004, the decision denying his request was

affirmed.  (Compl., ¶ V.5.).

On September 14, 2004, Grigsby filed this civil rights action against the following

Defendants: Gary Sims, religious administrator of the Ohio Department of Rehabilitation

and Corrections; Ernie Moore, the Warden of LCI; and Chaplain Benton, LCI's chaplain.

## II.  Summary Judgment Standard.

Summary judgment is governed by Rule 56(c) of the Federal Rules of Civil

Procedure which provides:

> The judgment sought shall be rendered forthwith if the pleadings,
> depositions, answers to interrogatories, and admissions on file, together
> with the affidavits, if any, show that there is no genuine issue as to any
> material fact and that the moving party is entitled to judgment as a matter
> of law.

"[T]his standard provides that the mere existence of *some* alleged factual dispute

between the parties will not defeat an otherwise properly supported motion for summary

judgment; the requirement is that there be no *genuine* issue of *material* fact."  *Anderson*

*v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248 (1986) (emphasis in original); *Kendall v.*

*The Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984).

Summary judgment will not lie if the dispute about a material fact is genuine; "that

is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving

party."  *Anderson*, 477 U.S. at 247-248.  The purpose of the procedure is not to resolve

factual issues, but to determine if there are genuine issues of fact to be tried.  *Lashlee v.*

*Sumner*, 570 F.2d 107, 111 (6th Cir. 1978).  Therefore, summary judgment will be

3

granted "only where the moving party is entitled to judgment as a matter of law, where it is quite clear what the truth is, . . . [and where] no genuine issue remains for trial, . . . [for] the purpose of the rule is not to cut litigants off from their right of trial by jury if they really have issues to try."  *Poller v. Columbia Broad. Sys., Inc.*, 368 U.S. 464, 467 (1962); accord, *County of Oakland v. City of Berkeley*, 742 F.2d 289, 297 (6th Cir. 1984).

In a motion for summary judgment the moving party bears the "burden of showing the absence of a genuine issue as to any material fact, and for these purposes, the [evidence submitted] must be viewed in the light most favorable to the opposing party." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970) (footnote omitted). Inferences to be drawn from the underlying facts contained in such materials must be considered in the light most favorable to the party opposing the motion.  *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962); *Watkins v. Northwestern Ohio Tractor Pullers Ass'n, Inc.*, 630 F.2d 1155, 1158 (6th Cir. 1980).

If the moving party meets its burden and adequate time for discovery has been provided, summary judgment is appropriate if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The mere existence of a scintilla of evidence in support of the opposing party's position will be insufficient; there must be evidence on which the jury could reasonably find for the opposing party.  *Anderson*, 477 U.S. at 251 (quoting *Improvement Co. v. Munson,* 14 Wall. 442, 448 (1872)).  As is provided in Fed. R. Civ. P. 56(e):

4

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.  If he does not so respond, summary judgment, if appropriate, shall be entered against him.

Thus, "a party cannot rest on the allegations contained in his . . . [pleadings] in opposition to a properly supported motion for summary judgment against him."  *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 259 (1968) (footnote omitted).

## III.  Discussion.

### A.  Substantial Burden on Free Exercise.

Because "courts are ill equipped to deal with the increasingly urgent problems of prison administration and reform," prison officials "should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security."  *Procunier v. Martinez,* 416 U.S. at 405-06; *Bell v. Wolfish,* 441 U.S. 520, 547 (1979). "'To ensure that courts afford appropriate deference to prison officials,' the Supreme Court has 'determined that prison regulations alleged to infringe constitutional rights are judged under a 'reasonableness' test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights.'" *Flagner v. Wilkinson*, 241 F.3d 472, 481 (6th Cir. 2001) (quoting *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987)).

In *Turner v. Safley,* 482 U.S. 78, 89 (1987), the Supreme Court identified four factors to be considered when determining whether prison officials have unconstitutionally interfered with a prisoner's First Amendment rights.  These factors

were summarized by the United States Court of Appeals for the Sixth Circuit in *Spies v.*

*Voinovich,* 173 F.3d 389, 403 (6th Cir. 1999):

> The Supreme Court has instructed that "when a prison regulation
> impinges on inmates' constitutional rights, the regulation is valid if it is
> reasonably related to legitimate penological interests." *Turner v. Safley*,
> 482 U.S. 78, 89, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987). The *Turner* Court
> outlined four factors that are relevant in determining the reasonableness of
> a challenged prison regulation. "First, there must be a valid, rational
> connection between the prison regulation and the legitimate governmental
> interest put forward to justify it." *Ibid*. If not, the regulation is unconstitu-
> tional, and the other factors do not matter. *Id*. at 89-90, 107 S.Ct. 2254.
> Unlike the first factor, the remaining factors are considerations that must
> be balanced together: (2) "whether there are alternative means of exer-
> cising the right that remain open to prison inmates"; (3) "the impact that
> accommodation of the asserted constitutional right will have on guards
> and other inmates, and on the allocation of prison resources generally";
> and (4) whether there are "ready alternatives" available "that fully accom-
> modate the prisoner's rights at de minimis cost to valid penological inter-
> ests." *Id*. at 90-91, 107 S. Ct. 2254.

The Sixth Circuit further noted that these factors do not have to be weighed evenly. *Id*.

Defendants agree that the proper test for upholding prison regulations is

determining if there is a reasonable penological basis for the action that violates the

prisoner's constitutional rights.  However, they argue that this test only applies after a

showing that the constitutional violation is substantial.  They argue that the burden

imposed on Grigsby was not substantial because their interference with Grigsby's free

exercise rights was only temporary.  A second asserted reason for finding that the

burden was not substantial is that courts consider all available means for a prisoner to

pursue his faith, and no substantial burden results, even when a particular

accommodation is denied, if there are ample alternative means for Grisgby to pursue

his faith.  Defendants maintain that Grigsby has a variety of alternative ways to exercise

his faith such as attending worship services on other days of the week.

6

While the Court in *Turner*, prior to setting out the four-factor test, discussed the extent of the burden imposed by the regulation, it did not state that lower courts must find free exercise rights are substantially burdened before applying the four factors.  *Id.* Rather, the Court recognized that "*Pell* . . . simply teaches that it is appropriate to consider the extent of [the] burden when 'we [are] called upon to balance First Amend-ment rights against [legitimate] governmental interests.'" *Id.* at 88 (quoting *Pell v. Procunier*, 417 U.S. 817, 824 (1974)).

Defendants argue that *Abdullah v. Fard*, 974 F. Supp. 1112 (N.D. Ohio 1997), requires an inmate to show a substantial burden on his free exercise rights before applying the *Turner* factors.  They rely on the court's statement that if the failure to accommodate the inmate's religious request "is found to be a substantial burden on a central tenet of Plaintiff's religion," the court would then undertake the *Turner* analysis to determine if the interference "is reasonably related to legitimate penological interests." *Id.* (quotation omitted) (citation omitted).[1]  Defendants do not cite any binding authority that requires this Court to find a substantial burden before applying *Turner*.

Further, the difficulty with accepting the "substantial burden" test as controlling is

---

[1]  The other cases that Defendants rely upon for their argument that Grigsby must show a substantial burden on his free exercise rights before undertaking the *Turner* analysis are distinguishable.  In these cases, the courts were performing an analysis under the provisions of the Religious Freedom Restoration Act (RFRA).  *See Bryant v. Gomez*, 46 F.3d 948 (9th Cir. 1994); *Werner v. McCotter*, 49 F.3d 1476 (10th Cir. 1995) (stating "[c]onstraints upon religious conduct will not fall within the ambit of the Act unless a 'substantial burden' is placed upon a prisoner's capacity to exercise or express his sincerely held beliefs or faith.").  RFRA was held unconstitutional as applied to the states.  *See Cutter v. Wilkinson*, _____ U.S. _____, 2005 WL 1262549 *1, 4 (May 31, 2005) (citing *City of Boerne v. Flores*, 521 U.S. 507, 532-36 (1997)).

that it was the test used in RFRA analysis.[2]  RFRA is unconstitutional as applied to the states and is therefore not the appropriate test to be used when the state or its subdivisions are the defendants.  Moreover, there is no Supreme Court precedent that courts must first determine that a substantial burden exists prior to applying the four factors espoused in *Turner*.  Rather, when an inmate is deprived of his free exercise rights, the courts are to apply the factors to determine if the deprivation is reasonable, which considers the extent of the burden imposed on the inmate's constitutional right.  *See generally Turner*, 482 U.S. 78*; O'Lone*, 482 U.S. 342.

Defendants contend that they do not need to provide any justifications for inter-fering with Grigsby's free exercise rights because they did not substantially burden his rights.  (Objs., pp. 2-3).  This reasoning is in opposition to the test set forth by the Supreme Court.  Although an inmate must first show that his constitutional rights have been violated prior to applying the *Turner* factors, the "reasonableness" of the interference will vary with the justifications.  More fundamentally, the rationale for the *Turner* four-factor analysis is that incarceration requires the 'withdrawal or limitation of many privileges and rights . . . .'  *O'Lone*, 482 U.S. at 348.  (quoting *Price v. Johnston*, 334 U.S. 266, 285 (1948)).  These "limitations on the exercise of constitutional rights arise both from the fact of incarceration and from valid penological objectives–including deterrence of crime, rehabilitation of prisoners, and institutional security."  *Id.*  Because prison officials are trained and entrusted with these decisions, the courts apply a less

---

[2]  RFRA provides that the "[g]overnment shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability, except as provided in subsection (b)."  42 U.S.C. §§ 2000bb-1(a).

restrictive reasonableness test to prison regulations that interfere with prisoners'

exercise of their constitutional rights.  But the touchstone is that the regulation that

interferes with the prisoner's exercise of a constitutional right must be supported by a

legitimate penological interest. *Id.* at 349.  If the regulation is not supported by a

legitimate penological interest, it is unconstitutional; the *Turner* analysis ends there.

*Spies,* 173 F.3d at 403.  Without some proffered justification for Defendants'

interference with Grigsby's free exercise rights, defendants are not entitled to summary

judgment.

### B.  Qualified Immunity.

Whether qualified immunity protects a defendant is a question of law; it is also

an affirmative defense.  *See Pray v. City of Sandusky*, 49 F.3d 1154, 1156 (6th Cir.

1995).  "Government officials who perform discretionary functions are generally entitled

to qualified immunity and are protected from civil damages so long as 'their conduct

does not violate clearly established statutory or constitutional rights of which a

reasonable person would have known.'" *Id*. at 1157 (quoting *Harlow v. Fitzgerald,* 457

U.S. 800, 818 (1982)).  In other words, a defendant will be protected from liability when

(1) the right violated was not clearly established or (2) even if the right is one that is

clearly established, a reasonable person in the defendant's position would have failed to

appreciate that his or her conduct violated that right.  *Id.*  (citing *Anderson v. Creighton*,

483 U.S. 635, 640 (1987)).

"'Clearly established,' for purposes of qualified immunity analysis, means that the

'contours of the right must be sufficiently clear that a reasonable official would

understand that what he is doing violates that right.'" *Murphy v. Carroll,* 202 F. Supp. 2d

9

421, 423 (D. Md. 2002) (citation omitted). The standard is one of "objective reasonableness." *Pray,* 49 F.3d at 1158. It is applied on a case-by-case, fact-specific basis that determines "whether a reasonable official in the defendants' position could have believed that his conduct was lawful, in light of clearly established law and the information he possessed." *Id.* (citing *Anderson*, 483 U.S. at 640; *Adams v. Metiva*, 31 F.3d 375, 386 (6th Cir. 1994)). "Although it is not necessary for the very act in question to have been held unlawful for qualified immunity to attach, the unlawfulness of the act must be reasonably apparent in the light of the preexisting law." *Hayes v. Long,* 72 F.3d 70, 73 (8th Cir. 1995) (citing *Anderson*, 483 U.S. at 640). So even when the defendant is mistaken, he is entitled to the defense so long as his conduct was objectively reasonable. *Pray*, 49 F.3d at 1156 (citing *Castro v. United States*, 34 F.3d 106, 112 (2d Cir. 1994)).

Although the burden is on the movant to support a grant of summary judgment, a plaintiff has the burden of alleging and proving that the defendant violated a "clearly established right of which a reasonable person would have known." *Id.* (citing *Adams*, 31 F.3d at 386). Therefore, a plaintiff must establish (1) that a clearly established right was violated and (2) "that a reasonable officer in the defendant's position should have known that the conduct at issue was undertaken in violation of that right." *Id.* (citing *Johnson v. Estate of Laccheo*, 935 F.2d 109, 111 (6th Cir. 1991)). The Supreme Court has stated that inmates retain only limited constitutional rights even in the context of the First Amendment's guarantee of the free exercise of religion. *Turner,* 482 U.S. 78. Accordingly, a prisoner's free exercise rights are limited and may be regulated by prison authorities, so long as such regulations are "reasonably related to legitimate penological

10

interests." *Id.* at 89.

Here, Grigsby is claiming that when Defendants required him to work on four Sundays, they violated his clearly established right to rest on his Sabbath.   As long as it is a sincerely held religious belief, the right to refuse to work on one's Sabbath is protected.  *See Frazee v. Illinois Dep't of Employment Sec.*, 489 U.S. 829, 833 (1989); *see also Sherbert v. Verner,* 374 U.S. 398 (1963).  Moreover, there is not a requirement that someone seeking this protection demonstrate that "he [or she] was responding to the commands of a particular religious organization."  *Frazer*, 489 U.S. at 834. Defendants argue that these cases are distinguishable because they deal with the free exercise rights of non-inmates.

Defendants rely heavily on *Murphy*, 202 F. Supp. 2d 421, in which a Jewish inmate challenged the actions of prison officials for essentially forcing him to clean his cell on Saturday, the Jewish Sabbath.  Although there was no formal policy that cells had to be cleaned on Saturday, the prison did require prisoners to clean their cells and only made cleaning supplies available on Saturday.  *Id.* at 423.  The court determined that forcing the plaintiff to clean his cell on Saturday was sufficient to establish a deprivation of a constitutional right.  *Id.* at 424.  The court further determined that requiring inmates to clean their cells on Saturday did not reasonably serve any legitimate penological interest particularly when balanced against the free exercise right being violated.  *Id.*  However, qualified immunity would protect the defendants because the law was not clearly established in that there was "no guidance regarding the observance of the Jewish Sabbath in the context of prison work, programming and assignments."  *Id.* at 425.

11

Unlike the claim presented in *Murphy*, the law has long been clearly established that a state may not compel non-denominational Christians to work on the Sabbath. *Frazee,* 489 U.S. at 832, 834.  Prisoners are not stripped of all constitutional protections when they are incarcerated. *O'Lone,* 482 U.S. at 348.  It is well established that a prison official cannot interfere with a prisoner's free exercise of his religious beliefs unless the interference is based on a prison policy that is reasonably related to a legitimate penological interest.  *Turner*, 482 U.S. at 89; *O'Lone*, 482 U.S. at 233-49.   Here, Defendants advance no penological interest to support their decision to force Plaintiff to work on the Sabbath.  Consequently, they are not entitled to summary judgment.

## IV.  Conclusion.

Defendants' April 11, 2005 objections to the Magistrate Judge's report and recommendation (doc. 37) are **OVERRULED**.  The Magistrate Judge's February 28, 2005 Report and Recommendation is **ADOPTED.**   Accordingly, Plaintiff's pendent state law claims are **DISMISSED**, Plaintiff's claims for injunctive relief are **DENIED**, Defendants' motion for summary judgment claiming they did not violate Plaintiff's right to the free exercise of his religion is **DENIED**, and Defendants' claims that they are protected by the defense of qualified immunity are **DENIED**.  Further, Plaintiff's September 21, 2004 motion for a preliminary injunction (doc. 5) is **DENIED.**

Defendants' November 26, 2004 motion to strike (doc. 11), Defendants' December 12, 2004 motion to stay discovery (doc. 14), and Plaintiff's December 12, 2004 motion for leave to file an amended complaint (doc. 18) are **MOOT**.  The Clerk of Court is **DIRECTED** to remove documents 11, 14, and 18 from the pending motions list.

**IT IS SO ORDERED.**

 /s/   Gregory L. Frost_____
Gregory L. Frost, Judge
United States District Judge