IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JOSHUA J. GRIGSBY, | : | |
| Plaintiff, | : | Case No. 2:04-cv-882 |
| v. | : | Judge Frost |
| REVEREND GARY SIMS, *et al.*, | : | Magistrate Judge Abel |
| Defendants. | : | |

### REPORT AND RECOMMENDATION

This matter is before the Magistrate Judge on defendants' February 15, 2006 unopposed motion for summary judgment pursuant to Rule 56, Fed. R. Civ. P. (doc. 50), plaintiff's unopposed May 16, 2006 motion to reinstate claim for injunctive relief and notice of change of address (doc. 53), and plaintiff's May 30, 2006 motion to reinstate claims for injunctive relief and motion for immediate preliminary injunction filed on September 21, 2004 (doc. 56). At the time of filing this action, plaintiff Joshua J. Grigsby was an inmate at the Lebanon Correctional Institution ("LCI"). He brought suit pursuant to 42 U.S.C. § 1983 alleging defendants, a number of prison officials, violated his free exercise rights protected by the First and Fourteenth Amendments when they forced him to work on Sunday, the Christian Sabbath. He also asserts similar claims under the Ohio State Constitution.

**I. Background.**

Upon Grigsby's arrival at LCI in July 2004, he executed a religious affiliation intake form. (Aff. of Arthur Thibeault, ¶ 5). The form asked for the inmate's number, date and place of birth, race, sex, church affiliation, and religious preferences. Grigsby completed the portion of

the form that asked for his date and place of birth, race, and sex, but he left all of the questions regarding his religious affiliation blank.

On Sunday September 5, 2004, Grigsby began working in LCI's food services, which according to defendants is a common work position for new inmates. He continued working in this position until October 28, 2004, when he had gained enough seniority to transfer to a different job. (Aff. of Gerald LeForge, ¶ 4). While working in food services, inmates are required to work alternating days. (Aff. of Gerald LeForge, ¶ 3). Accordingly, while assigned this job, Grigsby was required to work four Sundays: September 5; September 19; October 3; and October 17.

Despite not indicating his religious affiliation on the religious affiliation intake form, Grigsby maintains that he is a Christian, and he should not be required to work on Sunday. He alleges that on August 5, 2004, he filed a religious accommodations request with defendant prison Chaplain Benton asking that he be excused from working on the Sabbath. (Pl.'s Mot. for Immediate Prelim. Inj., p. 3). On August 17, Benton and Moore denied Grigsby's request. *Id.* An appeal was made to the warden, and on August 27, 2004, the decision denying his request was affirmed. *Id.* Grigsby executed his complaint on September 2, and it was filed in this Court on September 14, 2004. He names the following defendants: Reverend Gary Sims, Religious Services Administrator of LCI; Ernie Moore, Warden of LCI; and Chaplain Benton, Chaplain of LCI.

On February 19, 2005, Grigsby was released on post release control. However, in his May 16, 2006 motion to reinstate claim for injunctive relief and notice of change of address, Grigsby states that he has returned to LCI.

**II.  Defendants' Arguments for Summary Judgment.**

Defendants argue that they are entitled to summary judgment because under the Religious Land Use in Institutionalized Persons Act of 2000, 42 U.S.C. § 2000cc, *et seq*., ("RLUIPA"), prison officials are entitled to great deference when making regulations that implicate prison security concerns and prison operations.  In this case, defendants' regulations pass a strict scrutiny analysis because inmates must be fed seven days a week and allowing discretionary exceptions to that relieve inmates from performing this undesirable job will foster hostility and ultimately more dangerous prison conditions.  Therefore, prison officials have a compelling reason to treat all inmate's equally and to deny Grigsby' requested religious accommodation.

Further, defendants maintain that the only reason that Grigsby sought a religious accommodation is because of the undesirability of the food services jobs, which are the least favorite jobs among inmates.  Accordingly, to be fair, all new inmates are assigned to food services positions and are required to work alternating Sundays.

Next defendants argue that under *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 350 (6th Cir. 1988), Grigsby's First Amendment claim cannot survive because there are a number of alternatives available for Grigsby to practice his Christian beliefs.         Defendants identify the following alternative ways that Grigsby can exercise is faith: (1) Grigsby was not required to work all day on Sunday, which gave him ample time for practicing his religion during non-working hours; (2) Grigsby could still participate in Christian religious services on Sunday because there was both a morning and an evening mass offered, there was also a Saturday mass offered; and (3) Grigsby, as well as other inmates, can possess and study the Bible as well as

other religious literature.

Defendants also state that prior to denying Grigsby's request for accommodation, the prison checked its file which it maintains on the religious activities of its inmates and prior to Grigsby's request, the prison records show that Grigsby had not participated in any religious activities including not attending any church services.

Defendants also argue that Grigsby's claim for injunctive relief is moot because Grigsby is no longer incarcerated at LCI. Consequently, this Court is without jurisdiction to consider this claim. However, on May 16, 2006, Grigsby filed plaintiff's motion to reinstate claim for injunctive relief and notice of change of address (doc. 53). In his motion, Grigsby states that he has been returned to LCI and now seeks to reinstate his claim for injunctive relief. He has not submitted any affidavits or other evidence; however, he does state that as his first job assignment upon re-entering LCI he will have to work in food services, which will once again require him to work alternating Sundays. However, he does not state when he was returned to LCI, if and when his job assignment to food services began, and if and when this assignment ended. He also failed to state whether or not he has been required or will be required to work on any Sundays.

On May 30, 2006 Grigsby also filed a motion to reinstate claims for injunctive relief and motion for immediate preliminary injunction filed on September 21, 2004 (doc. 56). In this motion, Grigsby does not raise any additional facts, evidence, or arguments. Rather, he aks that in addition to an award of injunctive relief, this Court also award him a preliminary injunction which would prevent defendants from having Grigsby work in food services on Sundays.

**III. Analysis**

    **A. Summary Judgment Standard.**

Summary judgment is governed by Rule 56(c) of the Federal Rules of Civil Procedure which provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

"[T]his standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248 (1986) (emphasis in original); *Kendall v. The Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984).

Summary judgment will not lie if the dispute about a material fact is genuine; "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 247-248. The purpose of the procedure is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried. *Lashlee v. Sumner*, 570 F.2d 107, 111 (6th Cir. 1978). Therefore, summary judgment will be granted "only where the moving party is entitled to judgment as a matter of law, where it is quite clear what the truth is, . . . [and where] no genuine issue remains for trial, . . . [for] the purpose of the rule is not to cut litigants off from their right of trial by jury if they really have issues to try." *Poller v. Columbia Broad. Sys., Inc.*, 368 U.S. 464, 467 (1962); accord, *County of Oakland v. City of Berkeley*, 742 F.2d 289, 297 (6th Cir. 1984).

In a motion for summary judgment the moving party bears the "burden of showing the

absence of a genuine issue as to any material fact, and for these purposes, the [evidence submitted] must be viewed in the light most favorable to the opposing party." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970) (footnote omitted).  Inferences to be drawn from the underlying facts contained in such materials must be considered in the light most favorable to the party opposing the motion.  *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962); *Watkins v. Northwestern Ohio Tractor Pullers Ass'n, Inc*., 630 F.2d 1155, 1158 (6th Cir. 1980).

If the moving party meets its burden and adequate time for discovery has been provided, summary judgment is appropriate if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The mere existence of a scintilla of evidence in support of the opposing party's position will be insufficient; there must be evidence on which the jury could reasonably find for the opposing party.  *Anderson*, 477 U.S. at 251 (quoting *Improvement Co. v. Munson,* 14 Wall. 442, 448 (1872)).  As is provided in Fed. R. Civ. P. 56(e):

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.  If he does not so respond, summary judgment, if appropriate, shall be entered against him.

Thus, "a party cannot rest on the allegations contained in his . . . [pleadings] in opposition to a properly supported motion for summary judgment against him." *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 259 (1968) (footnote omitted).

**B. RLUIPA**.

RLUIPA provides in pertinent part: "'No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution' unless the burden furthers 'a compelling governmental interest,' and does so by 'the least restrictive means.'" *Cutter v. Wilkinson,* 544 U.S. 709, 712 (2005) (quoting 42 U.S.C. 2000cc-1(a)(1)-(2)). "RLUIPA is the latest of long-running congressional efforts to accord religious exercise heightened protection from government-imposed burdens, consistent with this Court's precedent." *Id.* at 714. Religious exercise is defined as "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." *Id.* (quoting § 2000cc-5(7)(A)). RFRA, whose language and objectives are similar to RLUIPA, was enacted to prevent the creation of "undue,""frivolous or arbitrary" barriers that interfere with an inmate's religious practices in "unnecessary ways." *Id.* at 716-17. Moreover, the legislative history of RLUIPA suggests that Congress expected that the "courts would apply the Act's standard with 'due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources.'" *Id.* at 723 (quoting Joint Statement S7775 quoting S. Rep. No. 103-111, p. 10 (1993), U.S. Code Cong. & Admin. News 1993, pp. 1892, 1899, 1900)).

Defendants argue that they are entitled to summary judgment because their policy of requiring all new inmates to work on alternating Sundays is the only way to effectively and peacefully maintain prison operations. They argue that food services is the least favorable job position within the prison and that if any inmates are given the opportunity to avoid the assignment, it will create a hostile environment among the inmates who must continue working in the position thus jeopardizing prison safety and security.

Grigsby has failed to provide any argument in opposition to defendants' claims. While I am mindful, that "convicted prisoners do not forfeit all constitutional protections by reason of their conviction and confinement in prison[,]" *Bell v. Wolfish*, 441 U.S. 520, 545 (1979), this proposition must be weighed against the practical necessity that prison officials "should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Id. at* 547.

In *Murphy v. Carroll*, 202 F. Supp. 2d 421, 424 (D. Md. 2002), a Jewish inmate brought suit because prison officials provided him with free cleaning supplies on Saturday only. This essentially forced the prisoner to clean his cell on Saturday, the Jewish Sabbath. The court determined that the prison's interest in uniform inmate schedules and economy were insufficient to warrant interference with the inmate's free exercise of religion under the First Amendment.

Murphy was not brought pursuant to RLUIPA. Rather, the court applied a reasonable relationship test according to *Turner v. Safely*, 482 U.S. 78 (1987). This is a more lenient test than that stated in RLUIPA, which requires a least restrictive means analysis. Yet, for Grigsby's free exercise claim to survive, the accommodation he requested must be based on a genuinely held religious belief. *Weaver v. Jago*, 675 F.2d 116 (6th Cir. 1982).

Defendants argue that the evidence establishes that Grigsby's religious accommodation request is a pretext for relieving him of his obligation to perform an undesirable job. While Grigsby did not identify any religious affiliation or preference upon entering LCI, this fact alone does not necessarily preclude Grigsby's claim that he is a Christian seeking to observe the Sunday Sabbath. *See Love v. Reed*, 216 F.3d 682, 687-88 (8th Cir. 2000) (plaintiff changing and

8

developing his religious beliefs after being incarcerated). However, defendants have also submitted the November 19, 2004 affidavit of Arthur Thibeault, which states that LCI's prison file kept on inmates' religious activities shows that Grigsby has not even attended mass while incarcerated.

Grigsby has not responded these allegations nor has he submitted a sworn statement or other evidence to support his claim that his religious accommodation is sought for genuinely held religious beliefs. Based on uncontradicted evidence presented by defendants, plaintiff has failed to offer any evidence from which a finder of fact could conclude that working on alternate Sundays would violate his sincerely held religious beliefs.

### C. Alternative Means for Exercising his Religion.

Defendants argue that Grigsby has numerous alternative means available for exercising his religion and that they have otherwise shown that Grigsby's claim must fail under the *O'Lone v. Shabazz* and *Turner v. Safley* standards. The First Amendment protects beliefs that are rooted in religion and not beliefs that are purely secular or beliefs of personal preference. *Thomas v. Review Bd. of the Indiana Employment Sec. Div.,* 450 U.S. 707, 713 (1981). "[C]onvicted prisoners do not forfeit all constitutional protections by reason of their conviction and confinement in prison." *Bell v. Wolfish*, 441 U.S. 520, 545 (1979). However, prison officials "should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Id. at* 547. "'To ensure that courts afford appropriate deference to prison officials,' the Supreme Court has 'determined that prison regulations alleged to infringe constitutional rights are judged under a 'reasonableness' test less restrictive than that ordinarily

9

applied to alleged infringements of fundamental constitutional rights.'" *Flagner v. Wilkinson*, 241 F.3d 472, 481 (6th Cir. 2001) (quoting *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987)). The proper standard has been re-stated as follows: "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987). This "avoids the unnecessary intrusion of the judiciary into problems" better understood and resolved by those most familiar with the circumstances of maintaining and regulating prisons. *O'Lone*, 482 U.S. at 349-50.

Under *Turner*, there are four factors that the courts should consider to determine if the regulation is reasonable:

> (1) whether there is a valid, rational connection between the regulation and the interest asserted; (2) whether alternative means of exercising the right remain open to the prisoner; (3) the effect the requested accommodation will have on guards, other inmates, and the allocation of prison resources; and (4) whether there is some alternative which will accommodate the prisoner's needs with *de minimis* impact on the prison's asserted interests.

*Love v. Reed*, 216 F.3d 682, 690 (8th Cir. 2000) (citing *Turner*, 482 U.S. at 89-91).

The *Murphy* holding stated above is also relevant here: the court determined that the prison's interest in uniform inmate schedules and economy were insufficient to warrant interference with the inmate's free exercise of religion; and therefore, the inmate should be given an accommodation to observe his holy Sabbath. *Murphy,* 202 F. Supp. 2d at 424. Another similar case, also discussed in this Court's earlier ruling on defendants' first motion for summary judgment, is *Flagner* in which the court did an analysis of the *Turner* factors. *Flagner,* 241 F.3d 472.

Flagner was a prison inmate who wanted to grow his hair in accordance with Jewish doctrine. However, prison regulations required facial hair to be kept short. The court

determined that there was no alternative or substitute to growing peos. *Id*. at 486. No prison resources were ever diverted when Flagner had peos, and there was no impact on the guards or other prisoners by allowing Flagner to have his hair long. *Id*. The court ultimately held that Flagner's challenge to the regulation could not be decided on a motion for summary judgment by the defendants.

  This Court ruled in its June 14, 2005 Order that defendants would be denied summary judgment on Grigsby's claim because defendants' failed to articular any reason for their policy. Defendants now argue that the policy promotes efficient operation of the prison's food services as well as ensures the safety of the prison. Grigsby has failed to refute these allegations. Defendants also argue that they can otherwise satisfy the other *Turner* factors. Defendants have provided a number of other ways that Grigsby can practice his faith–including attending mass at alternative times and possessing and studying religious material.

  Studying religious material and attending mass are not the same as being able to observe the Christian Sabbath. Rather, the facts in this case are similar to those in *Murphy*. However, defendants are aguing that this prison policy serves inmate safety and security and not just administrative convenience. Decisions that impact the prison's interest in serving the safety and security of its inmates and guards should be accorded more deference than policies or regulations that facilitate administrative convenience. Grigsby does not dispute or raise any arguments that contradict defendants' position. Moreover, Grigsby has not established that his accommodation is requested because of a genuinely held religious belief. Because the accommodation requested is not made pursuant to a genuinely held religious belief, defendants are entitled to summary judgment.

11

    **D. Mootness.**

On June 14, 2005, this Court issued an order dismissing Grigsby's claims for injunctive relief as moot. In my February 28, 2004 Report and Recommendation, which was adopted by the district court, I reasoned that Grigsby was no longer working in food services or on Sundays which mooted his claim for injunctive relief. This same reasoning applies to Grigsby's renewed claim for injunctive relief. Grigsby fails to allege facts or evidence that state that he is working on Sundays and is unable to observe his holy Sabbath. Grigsby's claims for injunctive relief and his motions to renew his request for injunctive relief should be denied, and defendants should be granted summary judgment on this claim.

**IV. Conclusion.**

Accordingly, I **RECOMMEND** that defendants' February 15, 2006 unopposed motion for summary judgment pursuant to Rule 56, Fed. R. Civ. P. (doc. 50) be **GRANTED** and that this case be **DISMISSED**. I **FURTHER RECOMMEND** that plaintiff's unopposed May 16, 2006 motion to reinstate claim for injunctive relief and notice of change of address (doc. 53) be **DENIED**, and plaintiff's May 30, 2006 motion to reinstate claims for injunctive relief and motion for immediate preliminary injunction filed on September 21, 2004 (doc. 56) be **DENIED**.

If any party objects to this Report and Recommendation, that party may, within ten (10) days, file and serve on all parties a motion for reconsideration by the Court, specifically designating this Report and Recommendation, and the part thereof in question, as well as the basis for objection thereto. *See* 28 U.S.C. §636(b)(1)(B); Fed. R. Civ. P. 72(b).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and

waiver of the right to appeal the judgment of the District Court.  *See Thomas v. Arn*, 474 U.S. 140, 150-152 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *See also Small v. Secretary of Health and Human Services*, 892 F.2d 15, 16 (2d Cir. 1989).

/s/ Mark R. Abel
United States Magistrate Judge